1

2

3

4

5

6

7

8                **UNITED STATES DISTRICT COURT**

9               **CENTRAL DISTRICT OF CALIFORNIA**

10

11

12  Michael Ferguson,              )   CV 12-04434 RSWL (Ex)
                                   )
13                                 )   **ORDER RE: DEFENDANT'S**
                     Plaintiff,    )   **MOTION FOR SUMMARY**
14                                 )   **JUDGMENT, OR, IN THE**
        v.                         )   **ALTERNATIVE, PARTIAL**
15                                 )   **SUMMARY JUDGMENT** [27]
                                   )
16  Walmart,                       )
                                   )
17                   Defendant.    )
                                   )
18                                 )
                                   )
19                                 )
                                   )
20                                 )
                                   )
21  _____    )

22       Currently before the Court is Defendant Walmart's

23  ("Defendant") Motion for Summary Judgment, or in the

24  Alternative, Partial Summary Judgment [27].  The Court,

25  having reviewed all papers submitted pertaining to this

26  Motion, **NOW FINDS AND RULES AS FOLLOWS:** The Court

27  **GRANTS in part and DENIES in part** Defendant's Motion

28  for Summary Judgment, or in the Alternative, Partial

                                    1

Summary Judgment.

## I. BACKGROUND

Plaintiff Michael Ferguson ("Plaintiff") was hired as a "truck unloader" by Defendant on or about February 21, 2007.  Defendant's Statement of Uncontroverted Facts ("SUF") # 39.  Plaintiff alleges that starting on or about February 2008 to about March 2011, his coworkers made racist comments against him several times a day.  Ferguson Deposition Transcript ("Ferguson Depo.") 67:25-69:22.  Specifically, Plaintiff recalls that his coworkers, Mario and Jose, called him a "mayate" (which Plaintiff believes is Spanish for "nigger"), a "cockroach," and a "black bug."  Id. at 65:21-24.  Further, Plaintiff alleges that from February 2008 until January 2011, an assistant manager for Defendant, Fernando, called him a "mayate" several times a day.  Id. at 86:19:87:22.

On June 17, 2010, Plaintiff filed a complaint with Defendant regarding the inappropriate comments being made against him.  Notice of Lodgment of Exhibits ("NOL"), Ex. 23.  On or about November 2010, Plaintiff claims that someone put a noose on a forklift at his work.  Ferguson Depo. 91:16-92:6.  About a month later, in December 2010, two individuals from Defendant's corporate office interviewed all of the unloaders and investigated the noose incident as well as the racist comments being said to Plaintiff.  Id. at 93:5-14. Plaintiff was interviewed in this investigation, and

2

shortly thereafter, in January 2011, Fernando was fired as assistant manager.  Id. at 71:5-72:16.

However, Plaintiff claims that the racist comments against him did not stop even after Fernando was fired, because his coworker, Jose, continued to call him racial names up until March 2011.  Id. at 73:17-23. Although Plaintiff complained to an assistant manager, Sylvia Pope, Plaintiff argues that nothing was done. Id. at 77:3-77:25.

Notwithstanding his generally adequate performance reviews, Plaintiff was written up throughout his employment with Defendant for meal and rest break violations, productivity issues, disrespecting coworkers, poor business judgment, and profanity.  NOL, Ex. 16.  Further, Plaintiff was written up on January 23, 2011 for mishandling company equipment and on March 2, 2011 for failing to follow policies regarding time clock and payroll procedures.  Id.

On or about March 8, 2011, pursuant to Defendant's "Coaching for Improvement" policy, Plaintiff was questioned for three hours regarding harassment, using profane language, participating in inappropriate physical activities (including slapping and rough-housing with associates under his authority), failing to report associates with weapons, and becoming involved in several altercations, which violated Defendant's Statement of Ethics and its Discrimination/Harassment Prevention policies.  SUF #

3

19, 21.   On March 8, 2011, Defendant decided to terminate Plaintiff for "gross misconduct," effective March 9, 2011 ("March 2011 discharge").   Id. at # 19, 21.   However, after Plaintiff was questioned on March 8, 2011, he "felt ill."   Id. at # 20.   Plaintiff was diagnosed with anxiety on March 9, 2011 (Id. at # 9, 22), and his doctor recommended that he be placed off work from March 9, 2011 through March 27, 2011.   NOL, Ex. 6.

Plaintiff claims that when he gave Defendant the paperwork for his medical leave on March 9, 2011, Sylvia Pope, who was an assistant manager for Defendant, fired him.   Ferguson Depo. 98:8-10; SUF # 23.   The next day, on March 10, 2011, Plaintiff utilized Defendant's "Open Door Policy" to explain his position regarding the investigation and discharge and his need to take a medical leave of absence.   Ferguson Depo. 115:18-116:1.   Plaintiff spoke with Defendant's market manager, Chad, who said he would investigate Plaintiff's March 8, 2011 investigation, Sylvia Pope's refusal to accept Plaintiff's medical leave paperwork, and Plaintiff's termination.   Id. at 116:2-117:18.   On or about March 21, 2011, Defendant's store manager, John, spoke with Plaintiff and offered him his job back, but Plaintiff told him that he could not come back to work because he was already on sick leave. Ferguson Depo. 124:14-16.   That same day, Defendant granted Plaintiff's leave of absence from work, and

4

told Plaintiff to tell Defendant when he was clear to return to work. Id. at 127:14-25. Defendant later granted Plaintiff's request to extend his leave period from March 9, 2011 to July 20, 2011. NOL, Ex. 1 (Ferguson Depo. 140:3-141:9); Ex. 22.

Plaintiff did not attempt to return to work until on or about September 2011. NOL, Ex. 31. On that date, Plaintiff worked for thirty minutes before being told by a personnel officer that he had to clock out and leave. Ferguson Depo. 34:1-37:21. Defendant asserts that it could not permit Plaintiff to work in September 2011 without Plaintiff first providing a medical release in accordance with its Leave of Absence/FMLA policy, which he failed to provide. NOL, Ex. 15.

Plaintiff was finally released to return to work by his doctor on or about November 30, 2011. Id. at # 28. However, Plaintiff did not return to work when he was medically released to do so. NOL, Exs. 7, 18, 31. Defendant sent Plaintiff a letter on or about January 11, 2012, which informed Plaintiff that his leave of absence expired on July 20, 2011, and if Plaintiff did not return to work or contact a salaried member of management within three days of receipt of the letter, Plaintiff's employment could end. SUF # 29. Plaintiff did not respond to the January 11, 2012 letter, and was discharged for job abandonment on or about January 25, 2012 ("January 2012 discharge"). Id. at # 31.

Prior to Plaintiff's ultimate termination for job abandonment, Plaintiff filed two complaints with the Equal Employment Opportunity Commission ("EEOC") against Defendant.  On July 28, 2011, while Plaintiff was on medical leave, Plaintiff filed a charge with the EEOC alleging disability discrimination and retaliation ("First Charge").  Id. at # 1.  On or about August 11, 2011, Plaintiff was issued a right-to-sue letter from the EEOC, in response to the First Charge.  Id. at # 2.

On or about January 3, 2012, Plaintiff filed another charge with the EEOC, alleging race discrimination, retaliation, and disability discrimination ("Second Charge").  Id. at # 4. Plaintiff's EEOC charge on January 3, 2012 was referred to the California Department of Fair Employment and Housing ("DFEH") which issued Plaintiff a right-to-sue letter on February 9, 2012.  Id. at # 5.

On May 22, 2012, Plaintiff filed the instant Action against Defendants alleging four causes of action: (1) Disability Discrimination in violation of the American Disability Act ("ADA"), (2) Violation of the Family Medical Leave Act ("FMLA"), (3) Race Discrimination, and (4) Retaliation [1].  On October 7, 2013, Defendant filed the instant Motion for Summary Judgment or in the Alternative, Partial Summary Judgment [27], which was taken under submission on November 11, 2013 [35].

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no

genuine issue of material fact and the moving party is
entitled to judgment as a matter of law.  Fed. R. Civ.
P. 56(c).  A fact is "material" for purposes of summary
judgment if it might affect the outcome of the suit,
and a "genuine issue" exists if the evidence is such
that a reasonable fact-finder could return a verdict
for the non-moving party.  <u>Anderson v. Liberty Lobby,</u>
<u>Inc.</u>, 477 U.S. 242, 248 (1986).  The evidence, and any
inferences based on underlying facts, must be viewed in
the light most favorable to the opposing party.
<u>Twentieth Century-Fox Film Corp. v. MCA, Inc.</u>, 715 F.2d
1327, 1329 (9th Cir. 1983).

    Where the moving party does not have the burden of
proof at trial on a dispositive issue, the moving party
may meet its burden for summary judgment by showing an
"absence of evidence" to support the non-moving party's
case.  <u>Celotex v. Catrett</u>, 477 U.S. 317, 325 (1986).

    The non-moving party, on the other hand, is
required by Fed. R. Civ. P. 56(c) to go beyond the
pleadings and designate specific facts showing that
there is a genuine issue for trial.  <u>Id.</u> at 324.
Conclusory allegations unsupported by factual
allegations are insufficient to create a triable issue
of fact so as to preclude summary judgment.  <u>Hansen v.</u>
<u>United States</u>, 7 F.3d 137, 138 (9th Cir. 1993).  A non-
moving party who has the burden of proof at trial must
present enough evidence that a "fair-minded jury could
return a verdict for the [non-moving party] on the

evidence presented." <u>Anderson</u>, 477 U.S. at 255.  Where a motion for summary judgment is grounded on the assertion that the non-moving party has no evidence, the non-moving party may defeat the motion by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party." <u>Celotex</u>, 477 U.S. at 332.

In ruling on a motion for summary judgment, the Court's function is not to weigh the evidence, but only to determine if a genuine issue of material fact exists.  <u>Anderson</u>, 477 U.S. at 255.

### III. ANALYSIS

**A.** **<u>Request for Judicial Notice</u>**

Under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." (<u>Lee v. City of L.A.</u>, 250 F.3d 668, 689 (9th Cir. 2001)), and a court must take judicial notice of facts "if requested by a party and supplied with the necessary information."  Fed. R. Evid. 201(d).  A fact is appropriate for judicial notice only if it is not subject to reasonable dispute in that it is (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b).

Defendant requests this Court take judicial notice of (1) the First and Second Charges filed with the EEOC, (2) the right-to-sue letters on the First and

1  Second Charges, (3) Plaintiff's Complaint [1] (4)
2  Plaintiff's First Amended Complaint [18].  Because
3  these documents are not subject to reasonable dispute
4  and are capable of accurate and ready determination by
5  resort to sources whose accuracy cannot reasonably be
6  questioned, the Court **GRANTS** Defendant's request for
7  judicial notice.

8  **B.    Motion for Summary Judgment**

9       Based on the undisputed facts and the following
10 analysis, the Court **GRANTS in part and DENIES in part**
11 Defendant's Motion for Summary Judgment.

12      1.   Disability Discrimination

13      As a preliminary matter, the Court must determine
14 whether Plaintiff's claims for disability
15 discrimination and retaliation are time-barred.  Title
16 VII and the ADA obligate Plaintiff to file a timely
17 administrative charge of discrimination with the EEOC.
18 MacDonald v. Grace Church Seattle, 457 F.3d 1079, 1081
19 (9th Cir. 2006).  Title VII establishes two potential
20 limitations periods within which a plaintiff must file
21 an administrative charge.  Id. (citing 42 U.S.C. §
22 2000e-5(e)(1)).  Generally, a Title VII plaintiff must
23 file an administrative charge with the EEOC within 180
24 days of the last act of discrimination.  Id. at 1082.
25 However, the limitations period is extended to 300 days
26 if the plaintiff first institutes proceedings with a
27 "state or local agency with authority to grant or seek
28 relief from such practice."  Id.  Failure to timely

1   exhaust is treated as a violation of a statute of
2   limitations, though leaving open defenses such as
3   equitable tolling and estoppel.  See Draper v. Coeur
4   Rochester, 147 F.3d 1104, 1107 (9th Cir. 1998).

5       Further, Title VII obligates Plaintiff to file a
6   civil action in federal court within ninety days of
7   receiving a right-to-sue letter from the EEOC.  Nelmida
8   v. Shelly Eurocars, Inc., 112 F.3d 380, 383 (9th Cir.
9   1997).  This ninety day period is a statute of
10  limitations.  Id.  Therefore, if a claimant fails to
11  file the civil action within the ninety day period, the
12  action is barred.  Id.

13      Defendant asserts that Plaintiff's disability
14  discrimination and retaliation causes of action were
15  filed with the EEOC on July 28, 2011 ("First Charge").
16  NOL, Ex. 2.  Plaintiff received a right-to-sue letter
17  on his First Charge on August 11, 2011.  NOL, Ex. 3.
18  Defendant asserts that because Plaintiff filed this
19  Action on May 22, 2012, 285 days after he was issued
20  the right-to-sue letter, Plaintiff's causes of action
21  for disability discrimination and retaliation for
22  opposing disability discrimination are time-barred.

23      Although unclear, Plaintiff appears to argue in
24  Opposition that the discrimination was ongoing and the
25  continuing violations doctrine equitably tolls the
26  90-day filing requirement.  Opp'n 6:13-25.  However,
27  Plaintiff's argument is unavailing.  The continuing
28  violations doctrine addresses the issue of whether or

not a claimant has timely filed a charge within the statutory 180-day (EEOC) or 300-day (state agency) period from the last discrete act of discrimination, or during an ongoing claim of a hostile work environment. Edwards v. Tacoma Public Schools, No. C04-5656 RBL, 2006 WL 3000897, at *3 (W.D. Wash. Oct. 20, 2006).  The doctrine does not apply to the 90-day limitation period which runs from the date the EEOC or state agency issues its "right-to-sue" letter.  Id.  Thus, the Court finds that the continuing violations doctrine does not apply to Plaintiff's failure to file his lawsuit in this Court with regard to the claims contained in the First Charge.  See Edwards, 2006 WL 3000897, at *3. Accordingly, the Court **GRANTS** Defendant's Motion as to Plaintiff's claims for disability discrimination and retaliation for opposing unlawful disability discrimination because they are time-barred.

Even assuming, *arguendo*, that Plaintiff's cause of action for disability discrimination is not time-barred, this cause of action still fails as a matter of law.

To establish a prima facie disability discrimination, Plaintiff must show that he (1) is a disabled person within meaning of the ADA, (2) is a qualified individual, meaning he can perform the essential functions of his job, and (3) the employer terminated his employment because of his disability. Nunes v. Wal-Mart Stores, Inc., 164 F.3d 1243, 1246

(9th Cir. 1999).

If Plaintiff can set forth a prima facie case of disability discrimination, Defendant must articulate a legitimate, nondiscriminatory reason for discharging Plaintiff. Snead v. Metropolitan Property & Cas. Ins. Co., 237 F.3d 1080, 1093 (9th Cir. 2001). If the Defendant meets this burden, then the burden shifts back to Plaintiff to demonstrate a triable issue of fact as to whether such reasons are pretextual. Pardi v. Kaiser Permanente Hosp., Inc., 389 F.3d 840, 849 (9th Cir. 2004).

As part of his burden, Plaintiff is required to show that he is a disabled person within the meaning of the ADA. The ADA defines "disability" as: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(2).

The ADA does not define the terms "physical or mental impairment" or "substantially limits." See 42 U.S.C. §§ 12101–12102. However, the Ninth Circuit has considered the federal regulations that define "disability" under the pre-ADA Rehabilitation Act of 1973 such as 45 C.F.R. § 84.3. Fraser v. Goodale, 342 F.3d 1032, 1038 (9th Cir. 2003). Under 45 C.F.R. § 84.3(j)(2)(i), the phrase "physical or mental impairment" means any physiological disorder or

condition that affects enumerated body systems, or "any
mental or psychological disorder such as mental
retardation, organic brain syndrome, emotional or
mental illness, and specific learning disabilities."

To be substantially limited in a major life
activity means that a person must be unable to perform
a major life activity.  Shapiro v. Abraham Lincoln
University School of Law, No. CV 10-03177-JGB (FMOx),
2013 WL 4197098, at *8 (C.D. Cal. Aug. 12, 2013).
Major life activities include "caring for oneself,
performing manual tasks, walking, seeing, hearing,
speaking, breathing, learning, and working."  Fraser,
342 F.3d at 1038 (citing 45 C.F.R. § 84.3(j)(2)(ii)).

With respect to his alleged disability, Plaintiff
offers a self-serving declaration in which he describes
the symptoms of his alleged disability - that he became
"very ill with depression, headaches, anxiety-disorder,
irritable bowel syndrome, and backache."  Ferguson
Decl. ¶ 9.  However, Plaintiff does not offer any
evidence - through his deposition testimony, a
declaration, or otherwise - of any effects that his
alleged disability had on the activities of central
importance to his daily life.  For example, he proffers
no facts showing that he could not sleep, feed himself,
bathe, walk, see, dress himself, speak, or perform
manual tasks.  In addition, Plaintiff has presented no
evidence to show that his alleged disability affected
his ability to perform not only his job, but any job.

On the contrary, the evidence shows that Plaintiff was able to voluntarily commence full-time employment with another employer in December 2011.  NOL, Exs. 8, 9. With respect to the report in which his doctor, Dr. Chun, diagnosed Plaintiff with anxiety (NOL, Ex. 6), Dr. Chun does not specify how Plaintiff's diagnosis substantially limits a major life activity; rather, the report only specifies the dates of his medical leave. See NOL, Ex. 6.  Further, the note from Plaintiff's doctor, Dr. Curtis, extending his medical leave to July 20, 2011, also does not specify how Plaintiff's diagnosis substantially limits a major life activity. See Ferguson Decl., Ex. 3.

Accordingly, because Plaintiff has failed to create a genuine issue of material fact as to whether he qualifies as "disabled" under the ADA, the Court **GRANTS** Defendant's Motion as to Plaintiff's cause of action for disability discrimination.

2.   Violation of the FMLA

The FMLA creates two interrelated substantive employee rights: (1) the employee has a right to twelve work-weeks of leave in a twelve month period for an employee's own serious illness or to care for family members; and (2) the employee has a right to return to his or her job or an equivalent job after taking such leave.  29 U.S.C. §§ 2612(a), 2614(a); Bachelder v. Am. W. Airlines, Inc., 259 F.3d 1112, 1119 (9th Cir. 2001).

In order to prevail on his claim for violations of

the FMLA, Plaintiff must demonstrate that his FMLA
protected leave was a negative factor in Defendant's
decision to discharge him.  <u>Bachelder</u>, 259 F.3d at
1125.  Plaintiff can prove this claim by using either
direct or circumstantial evidence, and no scheme
shifting the burden of production back and forth is
required.  <u>Id.</u>

     Here, Plaintiff does not demonstrate that his FMLA
protected leave was a negative factor in Defendant's
decision to discharge him on March 8, 2011.  Plaintiff
asserts that on March 9, 2011, his doctor recommended
that he take time off work for 3 weeks due to his
stress/anxiety.  Ferguson Decl. ¶ 9.  He then asserts
that when he attempted to turn in his form requesting
medical leave on March 9, 2011, his assistant managers
initially refused to accept his paperwork.  Opp'n 8:8-
10; Ferguson Decl. ¶¶ 10, 11, 12.  Defendant provides
evidence that it made the decision to terminate
Plaintiff's employment on March 8, 2011, effective on
March 9, 2011.  NOL, Ex. 17.  Further, Defendant's
evidence shows that upon learning of Plaintiff's
stress/anxiety diagnosis, Defendant reinstated
Plaintiff's employment and granted him a medical leave
from March 9, 2011 until July 20, 2011.  NOL, Ex. 1
(Ferguson Depo. 140:3-141:9); Ex. 22.

     Thus, is unclear to the Court how Plaintiff's
allegations support the proposition that Plaintiff's
FMLA protected leave was a negative factor in

Defendant's decision to discharge Plaintiff, when that decision was made on March 8, 2011, before Plaintiff obtained his stress/anxiety diagnosis.  <u>See</u> NOL, Exs. 6 17.  Plaintiff does not provide any evidence showing that the decision to discharge Plaintiff was made *after* he made his request for medical leave.  Thus, because the decision to discharge Plaintiff was made *before* Plaintiff obtained his stress/anxiety diagnosis, and because Defendant reinstated Plaintiff upon learning of this diagnosis, Plaintiff has not demonstrated that his FMLA protected leave was a negative factor in Defendant's decision to discharge him on March 8, 2011.

As to the January 2012 discharge, Plaintiff fails to provide the Court with any direct or circumstantial evidence to support Plaintiff's cause of action for violation of the FMLA.  Rather, the record shows that as of January 11, 2012, Plaintiff remained on approved FMLA leave, beyond the statutorily mandated twelve week period.  NOL, Exs. 18, 21, 22.  Plaintiff admits that he was released to return to work on November 30, 2011, but did not return to work or contact Defendant regarding his work status even after Defendant sent him a letter on January 11, 2012 requesting that Plaintiff do so.  NOL, Exs. 1, 7, 18.  Defendant asserts that it decided to ultimately discharge Plaintiff on or about January 25, 2012 due to job abandonment (NOL, Ex. 19), and Plaintiff provides no other evidence to show that Plaintiff's FMLA leave was a factor in that decision.

16

1     Accordingly, because Plaintiff fails to provide the
2  Court with any direct or circumstantial evidence that
3  his FMLA protected leave was a negative factor in
4  Defendant's decision to discharge Plaintiff on March 8,
5  2011 or January 25, 2012, Plaintiff raises no genuine
6  issue of material fact and the Court **GRANTS** Defendant's
7  Motion as to Plaintiff's cause of action for violation
8  of the FMLA.
9     3.  <u>Statutory Race Discrimination</u>
10     As a preliminary matter, the Court should determine
11  whether Plaintiff's causes of action for statutory race
12  discrimination and retaliation for filing charges for
13  statutory race discrimination are time barred.
14  Defendant maintains that Plaintiff filed the Second
15  Charge with the EEOC on January 3, 2012, alleging race
16  discrimination, disability discrimination, and
17  retaliation.  Ferguson Decl., Ex. 4.  Although
18  Defendant cites to the date on the right-to-sue letter
19  (which was February 9, 2012), the notice actually
20  indicates that the letter was *mailed* on February 22,
21  2012.  <u>Id.</u>  The notice also indicates that Plaintiff
22  must file a lawsuit under Title VII "within 90 days of
23  [Plaintiff's] receipt of this notice."  <u>Id.</u>  Thus, it
24  appears that Plaintiff did not receive the letter until
25  after February 22, 2012.  Because this Action was filed
26  on May 22, 2012, the Court finds that Plaintiff's
27  causes of action for statutory race discrimination and
28  retaliation for opposing race discrimination are within

1  the 90 day time period and are not time-barred.  <u>See</u> 42
2  U.S.C. § 2000e-5(f)(1).

3        a.  *Racial discrimination pursuant to a*
4            *"disparate treatment" theory*
5        Title VII makes it "an unlawful employment practice
6  for an employer . . . to discriminate against any
7  individual with respect to his compensation, terms,
8  conditions, or privileges of employment, because of
9  such individual's race, color, religion, sex, or
10 national origin."  42 U.S.C. § 2000e-2(a)(1); <u>Aragon v.</u>
11 <u>Republic Silver State Disposal</u>, 292 F.3d 654, 658 (9th
12 Cir. 2002).  To establish prima facie racial employment
13 discrimination, Plaintiff must show that (1) he belongs
14 to a protected class, (2) he was qualified for the
15 position, (3) he was subjected to an adverse employment
16 action, and (4) that "similarly situated individuals
17 outside [their] protected class were treated more
18 favorably or other circumstances surrounding the
19 adverse employment action give rise to an inference of
20 discrimination.  <u>McDonnell Douglas Corp. v. Green</u>, 411
21 U.S. 792, 802 (1973); <u>Aragon</u>, 292 F.3d at 658.

22       If Plaintiff can set forth a prima facie case, the
23 burden of production shifts to Defendant to articulate
24 a legitimate, nondiscriminatory reason for discharging
25 Plaintiff.  <u>McDonnell</u>, 411 U.S. at 802.  If the
26 Defendant meets this burden, then Plaintiff has the
27 burden to set forth specific and substantial evidence
28 that Defendant's reasons are really a pretext for

1  racial discrimination.  <u>Aragon</u>, 292 F.3d at 661.

2      As to the first element, both Parties do not

3  dispute that Plaintiff, as an African-American

4  individual, is a member of a protected class.  As for

5  the second element, Plaintiff successfully alleges that

6  he was qualified for the position as a truck unloader,

7  given that Defendant has admitted that Plaintiff

8  performed competently in his work and earned pay

9  raises.  SUF ## 44, 47, 48.  Third, Plaintiff

10  successfully alleges that he was subject to an adverse

11  employment action - that he was initially terminated on

12  or about March 9, 2011 (SUF ## 19, 21,) and that he was

13  ultimately terminated on or about January 25, 2012.

14  SUF # 31.

15      As to the fourth element - whether similarly

16  situated employees engaged in similar conduct but

17  received favorable treatment or whether circumstances

18  existed suggesting a discriminatory motive - Plaintiff

19  provides no evidence that Defendant's decision to

20  terminate Plaintiff on March 8, 2011 (effective March

21  9, 2011), or its decision to terminate Plaintiff on or

22  about January 25, 2012 was racially motivated.

23  However, Plaintiff does provide evidence that his boss,

24  Veronica, would treat Mexican employees better than she

25  treated other employees, such that if Plaintiff called

26  in sick, he would get written up, but Mexican

27  associates called in sick often and were never

28  reprimanded.  Ferguson Depo. 59:18-62:3.  Thus, viewing

the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has provided some evidence, albeit very little evidence, that similarly situated individuals outside of Plaintiff's protected class were treated more favorably.  Accordingly, Plaintiff has met his burden of setting forth a prima facie case.

Even though the Court finds that Plaintiff has established a prima facie case for race discrimination, it also finds that Defendant has articulated a legitimate, non-discriminatory reason for initially discharging Plaintiff on March 8, 2011, and for ultimately discharging Plaintiff on or about January 25, 2012.  Specifically, Defendant maintains that it fired Plaintiff on March 8, 2011 after an investigation found that he engaged in "gross misconduct."  NOL, Ex. 17.  The exit interview taken on March 8, 2011 does not indicate that Plaintiff was discharged due to his race; rather, Plaintiff was investigated for payroll integrity, harassment, using profane language, and his involvement in physical activities such as rough housing with associates under his authority.  NOL, Ex. 17.  Further, after reinstating Plaintiff's employment, Defendant argues that it ultimately terminated Plaintiff's employment in January 2012 for "job abandonment" after he failed to respond to Defendant's January 11, 2012 letter requesting that he return to work or inform Defendant of his employment status.

NOL, Ex. 19.  Neither the January 11, 2012 letter nor
the exit interview taken prior to Plaintiff's January
2012 termination indicate that race played any factor
in Defendant's employment decisions with regard to
Plaintiff.  NOL, Ex. 17, 18.  Rather, the evidence
shows that Defendant's decision to terminate Plaintiff
was based on Plaintiff's failure to return to work.

     Because Defendant has articulated legitimate, non-
discriminatory reasons for its employment decisions,
Plaintiff bears the burden to show that there is a
genuine dispute of material fact that Defendant's
reasons are merely a pretext for race discrimination.
Here, Plaintiff has offered no direct evidence that
Defendant's employment decisions were merely pretext
for race discrimination.  Because he relies on
circumstantial evidence of discrimination, Plaintiff
must provide "specific and substantial" evidence of
pretext.  <u>Aragon</u>, 292 F.3d at 661.  Plaintiff fails to
meet his burden.  Plaintiff points out that he was
subjected to numerous racial slurs by his coworkers and
refers to another incident in which a noose was placed
on a forklift at work that occurred in or about
November 2010.  Ferguson Depo., 90:15-93:9.  However,
Plaintiff does not deny that corrective action was
taken six months later, in or about January 2011, when
a harassing manager was discharged.  <u>Id.</u>; Ferguson
Depo., 75:25-76:2.  Other than these allegations,
Plaintiff fails to address how Defendant's reasons for

1   its decisions to terminate Plaintiff in March 2011 and
2   January 2012 were merely a pretext for racial
3   discrimination.   Thus, the Court finds that the
4   allegations raised by Plaintiff do not constitute the
5   "specific and substantial" evidence of pretext that
6   Plaintiff needs in order to survive summary judgment.
7           b.   *Racial discrimination pursuant to a*
8                *"hostile work environment" theory*
9        However, Plaintiff could sustain his Title VII
10  action under a hostile work environment theory of
11  liability.   Under this theory, Title VII is violated
12  when the workplace is permeated with discriminatory
13  behavior that is sufficiently severe or pervasive to
14  create a discriminatorily hostile or abusive working
15  environment.   <u>Harris v. Forklift Systems, Inc.</u>, 510
16  U.S. 17, 21 (1993).
17       To make a prima facie case of a hostile work
18  environment, a person must show that: (1) he or she was
19  subjected to verbal or physical conduct of a racial
20  nature, (2) this conduct was unwelcome, and (3) the
21  conduct was sufficiently severe or pervasive to alter
22  the conditions of the victim's employment and create an
23  abusive working environment.   <u>Manatt v. Bank of
24  America, NA</u>, 339 F.3d 792, 798 (9th Cir. 2003).
25  Additionally, the working environment must both
26  subjectively and objectively be perceived as abusive.
27  <u>Harris</u>, 510 U.S. at 21-22.
28       In order to survive summary judgment, Plaintiff

22

must show the existence of a genuine factual dispute as
to: 1) whether a reasonable African-American man would
find the workplace so objectively and subjectively
racially hostile as to create an abusive working
environment, and 2) whether Defendant failed to take
adequate remedial and disciplinary action.  See
McGinest v. GTE Service Corp., 360 F.3d 1103, 1113 (9th
Cir. 2004).

     The Court notes that Defendant makes several
evidentiary objections to Plaintiff's Declaration with
respect to his allegations that his coworkers and
assistant manager called him racist names (i.e.,
"mayate," "black bug," and "cockroach") on the grounds
that these statements are inadmissible hearsay.  See
Def.'s Evidentiary Objections to Ferguson Decl.
("Def.'s Objections") ¶¶ 3, 4, 6.  However, the Court
**OVERRULES** these hearsay objections, because these
statements are not offered for the truth of the matter
asserted and do not constitute hearsay.  See Fed. R.
Evid. 801.

     Here, Plaintiff makes out a prima facie case of a
hostile work environment.  First, Plaintiff indicates
in his deposition testimony that he was subjected to
verbal conduct of a racial nature; specifically, that
his coworkers and his assistant manager, Fernando,
called him racist names, such as "cockroach," "black
bug," and "mayate," - which Plaintiff claims is the
Spanish word for "nigger."  Ferguson Depo., 65:1-69:19;

23

87:4-20, 89:3-23.   Second, Plaintiff indicates that
this conduct was unwelcome and offensive to him.
Ferguson Depo., 68:7-25.   Third, Plaintiff establishes
subjective hostility by offering the June 2010
complaint that he made to Defendant, in which Plaintiff
complains that the derogatory comments make it "very
difficult to work in the backroom."   Ferguson Decl.,
Ex. 1.   Further, Plaintiff indicates that using the
term, "cockroach" was offensive to him and had a racial
meaning.   See Ferguson Depo., 68:15-69:1; See McGinest,
360 F.3d at 1113.

In evaluating the objective hostility of a work
environment, the factors to be considered include the
"frequency of discriminatory conduct; its severity;
whether it is physically threatening or humiliating, or
a mere offensive utterance; and whether it unreasonably
interferes with an employee's work performance."
McGinest, 360 F.3d at 1113.   "The required level of
severity or seriousness varies inversely with the
pervasiveness or frequency of the conduct."   Id.
Considering the facts in the light most favorable to
Plaintiff, the Court finds that the incidents described
are sufficient to survive a motion for summary
judgment.   Specifically, Plaintiff asserts that someone
put a noose on the forklift sometime around November
2010.   Ferguson Depo., 90:15-93:9.   Further, Plaintiff
indicates that he was called a "mayate" by his
coworkers three or four times a day from February 2008

24

to March 2011.  Ferguson Depo., 68:3-6.  Although

"[n]ot every insult or harassing comment will

constitute a hostile work environment," "[r]epeated

derogatory or humiliating statements . . . can

constitute a hostile work environment."  McGinest, 360

F.3d at 1115.  Accordingly, the Court finds that

Plaintiff provides sufficient evidence to create a

genuine issue of material fact that a reasonable

African-American would find the workplace so

objectively and subjectively racially hostile as to

create an abusive working environment.

> i.  *Remedial measures*

Having determined that Plaintiff has presented a

triable issue of whether he was subjected to a hostile

work environment, the Court must decide whether

Defendant can be liable for the harassment.  Little v.

Windermere Relocation Inc., 301 F.3d 958, 968 (9th Cir.

2001) (citing Nichols v. Azteca Restaurant Enterprises,

Inc., 256 F.3d 864, 875 (9th Cir. 2001)); See also

Meritor, 477 U.S. at 70-72 (noting that a Title VII

plaintiff must also provide a basis for holding her

employer liable for the harassment).

An employer's liability for harassing conduct is

evaluated differently when the harasser is a supervisor

as opposed to a coworker.  McGinest, 360 F.3d at 1119.

An employer is vicariously liable for a hostile

environment created by a supervisor, although such

liability is subject to a two-pronged affirmative

defense - (1) "that the employer exercised reasonable care to prevent and correct promptly any harassing behavior;" and (2) "that the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." See Nichols, 256 F.3d at 877.

Here, Plaintiff argues that Fernando, his assistant manager, made several racial slurs against him - beginning from February 2008 until January 2011. Ferguson Depo., 89:10-23.  Although Defendant argues that Fernando was eventually fired on January 2011, Plaintiff had complained about Fernando as early as June 17, 2010.  Ferguson Decl., Ex. 1.  Further, it appears to the Court that it was not until December 2010 that Defendant investigated these racial comments. Ferguson Depo. 72:10-12.  As such, the Court finds that Plaintiff has raised a genuine issue that Defendant did not promptly correct Fernando's harassing behavior.

As to liability for actions by coworkers, "employers are liable for failing to remedy or prevent a hostile or offensive work environment of which management-level employees knew, or in the exercise of reasonable care should have known." McGinest, 360 F.3d at 1119.  An employer may nonetheless avoid liability for such harassment by undertaking remedial measures "reasonably calculated to end the harassment." Id. "The reasonableness of the remedy depends on its ability to: (1) 'stop harassment by the person who

26

engaged in the harassment;' and (2) 'persuade potential
harassers to refrain from unlawful conduct.'"  <u>Id.</u>  To
be adequate, an employer must intervene promptly.  <u>Id.</u>
(citing <u>Intlekofer v. Turnage</u>, 973 F.2d 773, 778 (9th
Cir. 1992)).

Plaintiff indicates that after his assistant
manager, Fernando, was fired in January 2011, his
coworker, Jose, continued to call him racial names.
Ferguson Depo., 74:7-11.  Plaintiff also asserts that
even though he complained to his assistant manager,
Sylvia Pope, on or about January 2011, Jose continued
to call him racist names.  Ferguson Depo., 74:7-78:3.
Accordingly, based on Plaintiff's deposition testimony,
it appears that Sylvia Pope may have known about the
continued use of racial slurs against Plaintiff, but
took no remedial action.  As such, the Court finds that
Plaintiff has raised a genuine issue that Defendant did
not promptly stop harassment by Plaintiff's coworkers.

Based on the foregoing, the Court **DENIES**
Defendant's Motion as to Plaintiff's statutory race
discrimination claim on the grounds that Plaintiff has
provided sufficient evidence to sustain a claim for
violation of Title VII under a hostile work environment
theory.

4.  <u>Retaliation</u>

The anti-retaliation provisions of Title VII forbid
retaliation against an employee or job applicant who
has made a charge, testified, assisted, or participated

27

in a Title VII proceeding or investigation.  42 U.S.C.
§ 2000e-3(a); <u>Burlington Northern & Santa Fe Ry. v.
White</u>, 548 U.S. 53, 56 (2006).  The plaintiff must
establish a prima facie case of retaliation by
demonstrating: 1) he engaged or was engaging in
activity protected under Title VII, 2) the employer
subjected him to an adverse employment decision, and 3)
there was a causal link between the protected activity
and the employer's action.  <u>Yartzoff v. Thomas</u>, 809
F.2d 1371, 1375 (9th Cir. 1987).

    To establish causation between a protected act and
an adverse employment action, Plaintiff must
demonstrate that engaging in the protected activity was
one of the reasons for the adverse employment action.
<u>Villiarimo v. Aloha Island Air</u>, 281 F.3d 1054, 1064-65
(9th Cir. 2002).  The Ninth Circuit has recognized that
in some causes, causation can be inferred from timing
alone; however, the adverse employment action must have
occurred fairly soon after the employee's protected
expression.  <u>Id.</u>

    If the plaintiff establishes a prima facie case,
the burden shifts to the employer to offer a legitimate
non-retaliatory reason for the adverse employment
action.  <u>Davis v. Team Elec. Co.</u>, 520 F.3d 1080, 1088-
89, 1091 (9th Cir. 2008).  If the employer offers such
a reason, the burden then shifts back to the plaintiff
to show that there is a genuine dispute of material
fact as to whether the employer's proffered reason for

1    the challenged action is pretextual.   Id. at 1091.

2        Plaintiff bases his fourth cause of action for

3    retaliation for filing a workers' compensation charge,

4    complaining of race discrimination against Defendant,

5    and for filing the First and Second Charges with the

6    EEOC.   Compl. ¶ 29.

7            i.   *Retaliation for filing a Worker's*

8                *Compensation claim*

9        Here, Plaintiff fails to set forth a prima facie

10   case of retaliation for filing a workers' compensation

11   charge.   Plaintiff references the workers' compensation

12   case in his deposition, in which he acknowledges that

13   he was deposed with regard to the workers' compensation

14   case sometime in 2012.   Ferguson Depo. 5:16-6:1.

15   Plaintiff also indicates that the workers' compensation

16   case had since been resolved on or about June 7, 2013

17   through a settlement for $8,000.   Ferguson Depo. 6:11-

18   21.   Other than referencing the workers' compensation

19   claim in his deposition, Plaintiff provides no evidence

20   whatsoever to support that there was a causal link

21   between his request for workers' compensation and

22   Defendant's decision to terminate Plaintiff on March 8,

23   2011, for Defendant's decision to refuse to allow him

24   to return to work on or about September 2011, or for

25   Defendant's decision to ultimately terminate Plaintiff

26   on or about January 25, 2012.   Absent such evidence, it

27   would be impossible for the Court to find a genuine

28   issue of material fact that Defendant retaliated

1 against Plaintiff for filing the workers' compensation
2 claim.   As such, the Court **GRANTS** Defendant's Motion as
3 to Plaintiff's claim for retaliation for filing a
4 workers' compensation charge.

5                    ii. *Retaliation for opposing unlawful race*
6                          *discrimination*

7        Moreover, Plaintiff fails to set forth a prima
8 facie case of retaliation for complaining of race
9 discrimination against Defendant.   Here, Plaintiff is
10 able to show that he was engaged in a protected
11 activity under Title VII, specifically, that he (1)
12 complained to Defendant on or about June 2010 about
13 racial slurs being said against him (Ferguson Decl.,
14 Ex. 1) and (2) that he participated in an investigation
15 on or about December 2010 against the employees who
16 made these racial slurs.   Ferguson Depo. 71:5-72:16.
17 Further, Plaintiff provides evidence that Defendant
18 subjected him to an adverse employment decision,
19 specifically, that Defendant (1) discharged him on
20 March 9, 2012, (2) refused to allow Plaintiff to return
21 to work on or about September 2011, and (3) ultimately
22 terminated Plaintiff on or about January 25, 2012.

23        However, Plaintiff does not show that there was a
24 causal link between Plaintiff's protected activities
25 and Defendant's employment decisions.   See Yartzoff,
26 809 F.2d at 1375.   Plaintiff does not provide any
27 evidence supporting a causal link, other than referring
28 to the date that Plaintiff filed his complaint for

racist comments (June 2010) and the dates that
Plaintiff was discharged (March 2011 and January 2012).
To establish causality based on temporal proximity
between an employer's knowledge of the protected
activity and an adverse employment action, the temporal
proximity must be very close.  <u>Richmond v. Oneok</u>, 120
F.3d 205, 209 (10th Cir. 1997) (recognizing that three
month period between the protected activity and the
termination, standing alone, does not establish a
causal connection).  Here, the March 8, 2011 discharge
occurred eight months after Plaintiff first complained
of the racist comments and three months after his
participation in the investigation of these racist
comments.  SUF ## 51, 21.  Thus, there is insufficient
proximity between the two events to raise the inference
that the protected complaint or participation led to
the discharge.

    To the contrary, it appears that after Plaintiff
made his complaints for racist comments, Defendant
investigated the situation in December 2010 and
terminated an employee who made these racist comments.
Ferguson Depo., 71:2-10.  Finally, Plaintiff obtained
two merit-based pay increases (SUF # 50) and was
promoted to Inventory Supervisor after the
investigation.  SUF # 53.  As to Plaintiff's claims
that Defendant refused to allow Plaintiff to return to
work on or about September 2011, and that Defendant
ultimately terminated Plaintiff in January 2012,

Plaintiff similarly fails to provide any evidence to
support a causal link between Plaintiff's protected
activity of opposing race discrimination and
Defendant's employment decisions.  Accordingly, because
Plaintiff has failed to set forth a prima facie case of
retaliation for opposing race discrimination, the Court
**GRANTS** Defendant's Motion as to this cause of action.

            iii.  *Retaliation for filing the First Charge*

    As to Plaintiff's claim of retaliation for filing
the First Charge with the EEOC, the Court finds that
Plaintiff sets forth a prima facie case.  First,
Plaintiff has provided sufficient evidence that he was
engaged in activity protected under Title VII -
specifically, that he filed the First Charge with the
EEOC opposing unlawful disability discrimination.
Ferguson Decl., Ex. 2.  Second, Plaintiff has provided
evidence that Defendant subjected him to an adverse
employment decision - that he was prevented from coming
back to work on or about September 2011.  Ferguson
Depo., 37:12-14, 38:9-39:19.  Third, there appears to
be a causal link between the protected activity and the
employer's action, albeit a tenuous one, because
Plaintiff filed the First Charge with the EEOC on or
about July 28, 2011 (Ferguson Decl., Ex 2), and
Plaintiff was allegedly prevented from returning to
work on or about September 2011.  Thus, the Court finds
that Plaintiff has established a prima facie case of
retaliation for filing the First Charge.

Therefore, because Plaintiff successfully sets forth a prima facie case of retaliation for filing the First Charge with the EEOC, Defendant must articulate a "legitimate, nondiscriminatory" reason for its employment decisions.  See <u>McDonnell</u>, 411 U.S. at 802. As to Plaintiff's March 8, 2011 discharge, Defendant argues that it fired Plaintiff for "gross misconduct." Defendant also acknowledges that although Plaintiff attempted to return to work sometime on or about September 2011, Defendant argues that it did not let Plaintiff return to work because he did not provide Defendant with a medical release to do so; rather, Defendant alleges that Plaintiff was eligible to be released to work only as early as October 31, 2011. NOL, Ex. 7.  As for the January 2012 discharge, Defendant argues that it fired Plaintiff for "job abandonment."  NOL, Ex. 19.

Thus, Plaintiff has the burden of demonstrating a triable issue of fact as to why Defendant's reason is merely a pretext for retaliation.  The Court notes that Defendant objects to Plaintiff's entire declaration, arguing that Plaintiff cannot utilize a declaration which contradicts his own sworn deposition testimony. Def.'s Objections ¶ 1.  The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his own prior deposition testimony.  <u>Kennedy v. Allied Mut. Ins. Co.</u>, 952 F.2d 262, 266 (9th Cir. 1991).  If a party, who was examined

at length on deposition, were allowed to raise an issue
of fact simply by submitting an affidavit contradicting
his own prior testimony, this would greatly diminish
the utility of summary judgment as a procedure for
screening out sham issues of fact.   Id.

Plaintiff attempts to provide direct evidence of
pretext.   Specifically, Plaintiff indicates in his
declaration that he was released to return to work by
his doctor on or about July 22, 2011, and after
presenting his work release papers to his manager, he
was told to go to work.   Ferguson Decl. ¶ 14.
Plaintiff later indicates in his declaration that 30
minutes later, Sylvia Pope, the assistant manager, told
him to stop working because he "filed a lawsuit against
them."   Ferguson Decl. ¶ 14.   However, Plaintiff's
declaration, executed on October 27, 2013, flatly
contradicts his earlier deposition testimony, taken on
August 7, 2013.   In his deposition, Plaintiff admits
that at some point in between March 9, 2011 and
December 2011 (Plaintiff was unsure of the date),
Plaintiff returned to work at Wal-Mart for 30 minutes.
Ferguson Depo., 32:23-33:13.   Plaintiff indicates that
he went to the personnel office, gave a woman named
Martha a slip to go back to work, clocked in, worked
for 30 minutes, and was called back to the personnel
office to clock out immediately thereafter.   Id. at
34:7-35:7, 36:4-37:14.   Plaintiff admits that when he
went back to the personnel office, Sylvia Pope was

there with Martha.  Id. at 37:1-11.  Plaintiff notes
that Martha told him that he had to clock out and
leave, but did not tell him why he had to do so and
that he did not ask for a reason.  Id. at 37:19-38:1.
Further, Plaintiff admits that *Sylvia Pope said nothing*
in this discussion – "she was just standing right next
to [Martha]."  Id. at 37:1-11 (emphasis added).  Thus,
while Plaintiff asserts in his declaration that Sylvia
Pope told him that he could not come back to work
because he "filed a lawsuit against them," such
testimony is contradictory to Plaintiff's earlier
deposition testimony where Plaintiff admits that Sylvia
Pope said nothing in this discussion.  Id. at 37:1-11.
As such, the Court **GRANTS** Defendant's objection to
Plaintiff's Declaration to the extent that he declares
that Sylvia Pope told him to stop working because he
"filed a lawsuit against them."  See Ferguson Decl. ¶
14.  Accordingly, the Court finds that Plaintiff's
declaration testimony regarding Sylvia Pope's statement
is improper and fails to create a genuine issue of
material fact.

    Accordingly, absent direct evidence of pretext,
Plaintiff's burden requires that he demonstrate pretext
with "specific and substantial" circumstantial evidence
to defeat the Defendant's Motion.  See Coghlan v.
American Seafoods Co. LLC, 413 F.3d 1090, 1094–95 (9th
Cir. 2005).  In Plaintiff's deposition, he testified
that he returned to the store four days in a row

following the day he met with Martha and Sylvia Pope in
personnel.  Id. at 38:11-13.  He claims that he spoke
with Rick, a personnel manager, and told him that he
got a doctor's note release to come back to work, but
that Rick said that he could not come back to work.
Id. at 39:1-16.  However, Plaintiff admits that Rick
never told him why he could not come back to work.  Id.
at 39:17-19.  Further, he provides a doctor's note,
dated April 20, 2011, that he required leave from April
20, 2011 to July 20, 2011.  Ferguson Decl., Ex. 3.

     However, such circumstantial evidence is not
"specific or substantial" enough to support that
Defendant's proffered reasons are merely a pretext for
retaliation for filing the First Charge.  Plaintiff
cites to a doctor's note, which was signed on April 20,
2011, indicating that he required medical leave until
July 20, 2011.  NOL, Ex. 22.  However, the medical form
does not show that Plaintiff was *eligible to return to
work* on July 20, 2011.  Id.  Other than the doctor's
note and Plaintiff's declaration, Plaintiff provides no
other evidence to the Court that Defendant retaliated
against Plaintiff for filing the First Charge with the
EEOC.  Accordingly, because Plaintiff fails to meet his
burden of providing "specific and substantial"
circumstantial evidence to defeat Defendant's Motion
for Summary Judgment, the Court **GRANTS** Defendant's
Motion as to Plaintiff's claim for retaliation for
filing the First Charge with the EEOC.

1                   iv. *Retaliation for filing the Second Charge*

2          As to Plaintiff's claim of retaliation for filing

3    the Second Charge of disability and race

4    discrimination, the Court finds that Plaintiff sets

5    forth a prima facie case.   First, Plaintiff has

6    provided sufficient evidence that he was engaged in

7    activity protected under Title VII – specifically, that

8    he filed the Second Charge with the EEOC for race and

9    disability discrimination on January 3, 2012.   Ferguson

10   Decl., Ex. 2.   Second, Plaintiff has provided evidence

11   that Defendant subjected him to an adverse employment

12   decision – that he was fired in January 2012.   Ferguson

13   Depo., 37:12-14, 38:9-39:19.   Third, there is a causal

14   link between the protected activity and the employer's

15   action, because the adverse employment action occurred

16   on or about January 25, 2012, only a few weeks after

17   Plaintiff filed the Second Charge.

18       Although Plaintiff successfully sets forth a prima

19   facie case, Defendant has articulated a legitimate,

20   nondiscriminatory reason for its decision to terminate

21   Plaintiff on or about January 2012, which was "job

22   abandonment."   NOL, Ex. 19.

23       In turn, Plaintiff fails to articulate a valid

24   argument or provide any evidence to support the

25   proposition that Defendant's reason is merely a pretext

26   for retaliation.   To the contrary, it appears that

27   Defendant made a good faith effort to communicate with

28   Plaintiff only eight days *after* Plaintiff filed the

Second Charge and specifically requested that he return
to work or notify Defendant of his status.  NOL, Ex.
18.  Plaintiff admits that he did not return to work or
communicate with Defendant at any point thereafter.
Ferguson Depo. 43:16-44:7.  Because Plaintiff fails to
provide any evidence indicating that Plaintiff's reason
for discharging him in January 2012 was pretextual,
Plaintiff creates no genuine issue of material fact
that Plaintiff's reason was pretextual.  Accordingly,
the Court **GRANTS** Summary Judgment as to Plaintiff's
claim for Retaliation for filing the Second Charge.

**C.   Evidentiary Objections**

Beyond the evidentiary objections already ruled
upon as a basis for reaching the Court's conclusions,
the Court need not rule on any other evidentiary
objections.  Accordingly, the Court **DENIES as MOOT**
Defendant's remaining evidentiary objections.

### IV. CONCLUSION

Based on the foregoing, the Court **GRANTS in part
and DENIES in part** Defendant's Motion for Summary
Judgment.  Specifically, the Court **GRANTS** Defendant's
Motion as to Plaintiff's claims for disability
discrimination, violation of the FMLA, and retaliation.

However, the Court **DENIES** Defendant's Motion as to
Plaintiff's claim for statutory race discrimination.
Moreover, the Court hereby extends the motion filing
cut-off date from November 18, 2013 to February 3, 2014
to allow the Parties the opportunity to file any

1  dispositive motions with regard to Plaintiff's claim

2  for statutory race discrimination.  The Court hereby

3  continues the Final Pretrial Conference date from

4  January 28, 2014 to April 15, 2014 and continues the

5  Jury Trial date from February 25, 2014 to May 20, 2014.

6

7

8

9  **IT IS SO ORDERED.**
   DATED: January 2, 2014

10

11                              RONALD S.W. LEW
                        _____

12                      **HONORABLE RONALD S.W. LEW**

13                      Senior U.S. District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28