UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Michael Ferguson,<br><br>             Plaintiff,<br><br>     v.<br><br>Walmart,<br><br>             Defendant. | CV 12-04434 RSWL (Ex)<br><br>**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT [27]** |

After consideration of all the papers submitted pursuant to Defendant Walmart's ("Defendant") Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment [27], the Court makes the following findings of fact and conclusions of law:

//

**UNCONTROVERTED FACTS**

1. Plaintiff Michael Ferguson ("Plaintiff") was hired as a "truck unloader" by Defendant on or about February 21, 2007. Defendant's Statement of Uncontroverted Facts ("SUF") # 39.

2. Starting on or about February 2008 to about March 2011, Plaintiff's coworkers made racist comments against him several times a day. Ferguson Deposition Transcript ("Ferguson Depo.") 67:25-69:22. Specifically, Plaintiff recalls that his coworkers, Mario and Jose, called him a "mayate" (which Plaintiff believes is Spanish for "nigger"), a "cockroach," and a "black bug." Id. at 65:21-24. Further, Plaintiff alleges that from February 2008 until January 2011, an assistant manager for Defendant, Fernando, called him a "mayate" several times a day. Id. at 86:19:87:22.

3. On June 17, 2010, Plaintiff filed a complaint with Defendant regarding the inappropriate comments being made against him. Notice of Lodgment of Exhibits ("NOL"), Ex. 23.

4. On or about November 2010, someone put a noose on a forklift at Plaintiff's work. Ferguson Depo. 91:16-92:6.

5. In December 2010, two individuals from Defendant's corporate office interviewed all of the unloaders and investigated the noose incident as well as the racist comments being said to Plaintiff. Id. at 93:5-14.

1    6. Plaintiff was interviewed in this investigation, and shortly thereafter, in January 2011, Fernando was fired as assistant manager. Id. at 71:5-72:16.

4    7. After Fernando was fired, Plaintiff's coworker, Jose, continued to call him racial names up until March 2011. Id. at 73:17-23.

7    8. Plaintiff complained to an assistant manager, Sylvia Pope, regarding Jose's comments. Id. at 77:3-77:25.

10   9. The racist comments against Plaintiff did not stop after Plaintiff complained to Sylvia Pope. Id. at 73:17-23.

13   10. Notwithstanding his generally adequate performance reviews (SUF ## 42, 43, 44, 47, 48), Plaintiff was written up throughout his employment with Defendant for meal and rest break violations, productivity issues, disrespecting coworkers, poor business judgment, and profanity. NOL, Ex. 16.

19   11. Plaintiff was written up on January 23, 2011 for mishandling company equipment and on March 2, 2011 for failing to follow policies regarding time clock and payroll procedures. Id.

23   12. On or about March 8, 2011, pursuant to Defendant's "Coaching for Improvement" policy, Plaintiff was questioned for three hours regarding harassment, using profane language, participating in inappropriate physical activities (including slapping and rough-housing with associates under his authority),

3

failing to report associates with weapons, and becoming involved in several altercations, which violated Defendant's Statement of Ethics and its Discrimination/Harassment Prevention policies.  SUF # 19, 21.

13. On March 8, 2011, Defendant decided to terminate Plaintiff for "gross misconduct," effective March 9, 2011 ("March 2011 discharge").  Id. at # 19, 21.

14. Plaintiff was diagnosed with anxiety on March 9, 2011 (Id. at # 9, 22), and his doctor recommended that he be placed off work from March 9, 2011 through March 27, 2011.  NOL, Ex. 6.

15. On March 10, 2011, Plaintiff utilized Defendant's "Open Door Policy" to explain his position regarding the investigation and discharge and his need to take a medical leave of absence.  Ferguson Depo. 115:18-116:1.

16. On or about March 21, 2011, Defendant's store manager, John, reinstated Plaintiff's job, granted Plaintiff's leave of absence from work, and told Plaintiff to tell Defendant when he was clear to return to work.  Id. at 124:14-16, 127:14-25.

17. Plaintiff did not attempt to return to work until on or about September 2011.  NOL, Ex. 31.

18. On or about September 2011, Plaintiff worked for thirty minutes before being told by a personnel officer that he had to clock out and leave.  Ferguson

Depo. 34:1-37:21.

19. Defendant could not permit Plaintiff to work in September 2011 without Plaintiff first providing a medical release in accordance with its Leave of Absence/FMLA policy, which he failed to provide. NOL, Ex. 15.

20. Plaintiff was finally released to return to work by his doctor on or about November 30, 2011. Id. at # 28.

21. However, Plaintiff did not return to work when he was medically released to do so. NOL, Exs. 7, 18, 31.

22. Defendant sent Plaintiff a letter on or about January 11, 2012, which informed Plaintiff that his leave of absence expired on July 20, 2011, and if Plaintiff did not return to work or contact a salaried member of management within three days of receipt of the letter, Plaintiff's employment could end. SUF # 29.

23. Plaintiff did not respond to the January 11, 2012 letter, and was discharged for job abandonment on or about January 25, 2012 ("January 2012 discharge"). Id. at # 31.

24. On July 28, 2011, while Plaintiff was on medical leave, Plaintiff filed a charge with the EEOC alleging disability discrimination and retaliation ("First Charge"). Id. at # 1.

25. On or about August 11, 2011, Plaintiff was

issued a right-to-sue letter from the EEOC, in response to the First Charge. Id. at # 2.

    26. On or about January 3, 2012, Plaintiff filed another charge with the EEOC, alleging race discrimination, retaliation, and disability discrimination ("Second Charge"). Id. at # 4.

    27. Plaintiff's EEOC charge on January 3, 2012 was referred to the California Department of Fair Employment and Housing ("DFEH") which issued Plaintiff a right-to-sue letter on February 9, 2012. Id. at # 5.

    28. The right-to-sue letter indicates that the letter was *mailed* on February 22, 2012. Ferguson Decl., Ex. 4.

## CONCLUSIONS OF LAW

    1. Title VII and the ADA obligate Plaintiff to file a timely administrative charge of discrimination with the EEOC. MacDonald v. Grace Church Seattle, 457 F.3d 1079, 1081 (9th Cir. 2006).

    2. Title VII establishes two potential limitations periods within which a plaintiff must file an administrative charge. Id. (citing 42 U.S.C. § 2000e-5(e)(1)). Generally, a Title VII plaintiff must file an administrative charge with the EEOC within 180 days of the last act of discrimination. Id. at 1082. However, the limitations period is extended to 300 days if the plaintiff first institutes proceedings with a "state or local agency with authority to grant or seek relief from such practice." Id.

    3. Failure to timely exhaust is treated as a violation of a statute of limitations, though leaving open defenses such as equitable tolling and estoppel. See Draper v. Coeur Rochester, 147 F.3d 1104, 1107 (9th Cir. 1998).

    4. Further, Title VII obligates Plaintiff to file a civil action in federal court within ninety days of receiving a right-to-sue letter from the EEOC. Nelmida v. Shelly Eurocars, Inc., 112 F.3d 380, 383 (9th Cir. 1997). This ninety day period is a statute of limitations. Id. Therefore, if a claimant fails to file the civil action within the ninety day period, the action is barred. Id.

    5. The continuing violations doctrine addresses the issue of whether or not a claimant has timely filed a charge within the statutory 180-day (EEOC) or 300-day (state agency) period from the last discrete act of discrimination, or during an ongoing claim of a hostile work environment. Edwards v. Tacoma Public Schools, No. C04-5656 RBL, 2006 WL 3000897, at *3 (W.D. Wash. Oct. 20, 2006). The doctrine does not apply to the 90-day limitation period which runs from the date the EEOC or state agency issues its "right-to-sue" letter. Id.

    6. The continuing violations doctrine does not apply to Plaintiff's failure to file his lawsuit in this Court with regard to his claims for disability discrimination and retaliation for opposing unlawful

1 disability discrimination. <u>Edwards</u>, 2006 WL 3000897, at *3.

7. Because Plaintiff filed this Action on May 22, 2012, 285 days after he was issued the right-to-sue letter on his First Charge for disability discrimination and retaliation, those causes of action are time-barred.

8. To establish a prima facie disability discrimination, Plaintiff must show that he (1) is a disabled person within meaning of the ADA, (2) is a qualified individual, meaning he can perform the essential functions of his job, and (3) the employer terminated his employment because of his disability. <u>Nunes v. Wal-Mart Stores, Inc.</u>, 164 F.3d 1243, 1246 (9th Cir. 1999).

9. If Plaintiff can set forth a prima facie case of disability discrimination, Defendant must articulate a legitimate, nondiscriminatory reason for discharging Plaintiff. <u>Snead v. Metropolitan Property & Cas. Ins. Co.</u>, 237 F.3d 1080, 1093 (9th Cir. 2001). If the Defendant meets this burden, then the burden shifts back to Plaintiff to demonstrate a triable issue of fact as to whether such reasons are pretextual. <u>Pardi v. Kaiser Permanente Hosp., Inc.</u>, 389 F.3d 840, 849 (9th Cir. 2004).

10. Plaintiff has failed to create a genuine issue of material fact that he qualifies as "disabled" under the ADA.

1       11. The FMLA creates two interrelated substantive employee rights: (1) the employee has a right to twelve work-weeks of leave in a twelve month period for an employee's own serious illness or to care for family members; and (2) the employee has a right to return to his or her job or an equivalent job after taking such leave. 29 U.S.C. §§ 2612(a), 2614(a); Bachelder v. Am. W. Airlines, Inc., 259 F.3d 1112, 1119 (9th Cir. 2001).

12. In order to prevail on his claim for violations of the FMLA, Plaintiff must demonstrate that his FMLA protected leave was a negative factor in Defendant's decision to discharge him. Bachelder, 259 F.3d at 1125. Plaintiff can prove this claim by using either direct or circumstantial evidence, and no scheme shifting the burden of production back and forth is required. Id.

13. Plaintiff fails to provide the Court with any direct or circumstantial evidence that his FMLA protected leave was a negative factor in Defendant's decision to discharge Plaintiff on March 8, 2011 or January 25, 2012.

14. Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); Aragon v. Republic Silver State Disposal, 292 F.3d 654, 658 (9th

9

Cir. 2002).

15. To establish prima facie racial employment discrimination, Plaintiff must show that (1) he belongs to a protected class, (2) he was qualified for the position, (3) he was subjected to an adverse employment action, and (4) that "similarly situated individuals outside [their] protected class were treated more favorably or other circumstances surrounding the adverse employment action give rise to an inference of discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Aragon, 292 F.3d at 658.

16. If Plaintiff can set forth a prima facie case, the burden of production shifts to Defendant to articulate a legitimate, nondiscriminatory reason for discharging Plaintiff. McDonnell, 411 U.S. at 802.

17. If the Defendant meets this burden, then Plaintiff has the burden to demonstrate a triable issue of fact that Defendant's reasons are really a pretext for racial discrimination. Aragon, 292 F.3d at 661.

18. Although Plaintiff has met his burden of setting forth a prima facie case, Defendant has articulated a legitimate, non-discriminatory reason for initially discharging Plaintiff on March 8, 2011 ("gross misconduct"), and for ultimately discharging Plaintiff on or about January 25, 2012 ("job abandonment").

19. Plaintiff fails to offer any evidence that Defendant's employment decisions were merely pretext

for race discrimination.

20. Under a "hostile work environment" theory, Title VII is violated when the workplace is permeated with discriminatory behavior that is sufficiently severe or pervasive to create a discriminatorily hostile or abusive working environment. Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993).

21. To make a prima facie case of a hostile work environment, a person must show that: (1) he or she was subjected to verbal or physical conduct of a racial nature, (2) this conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. Manatt v. Bank of America, NA, 339 F.3d 792, 798 (9th Cir. 2003). Additionally, the working environment must both subjectively and objectively be perceived as abusive. Harris, 510 U.S. at 21-22.

22. To survive summary judgment, Plaintiff must show the existence of a genuine factual dispute as to: 1) whether a reasonable African-American man would find the workplace so objectively and subjectively racially hostile as to create an abusive working environment, and 2) whether Defendant failed to take adequate remedial and disciplinary action. See McGinest v. GTE Service Corp., 360 F.3d 1103, 1113 (9th Cir. 2004).

23. Plaintiff provides sufficient evidence to create a genuine issue of material fact that a

11

1  reasonable African-American would find the workplace so
2  objectively and subjectively racially hostile as to
3  create an abusive working environment.
4      24. Having determined that Plaintiff has presented
5  a triable issue of whether he was subjected to a
6  hostile work environment, the Court must decide whether
7  Defendant can be liable for the harassment.  <u>Little v.</u>
8  <u>Windermere Relocation Inc.</u>, 301 F.3d 958, 968 (9th Cir.
9  2001) (citing <u>Nichols v. Azteca Restaurant Enterprises,</u>
10 <u>Inc.</u>, 256 F.3d 864, 875 (9th Cir. 2001)); <u>See</u> <u>also</u>
11 <u>Meritor</u>, 477 U.S. at 70-72 (noting that a Title VII
12 plaintiff must also provide a basis for holding her
13 employer liable for the harassment).
14     25. An employer's liability for harassing conduct
15 is evaluated differently when the harasser is a
16 supervisor as opposed to a coworker.  <u>McGinest</u>, 360
17 F.3d at 1119.
18     26. An employer is vicariously liable for a hostile
19 environment created by a supervisor, although such
20 liability is subject to a two-pronged affirmative
21 defense - (1) "that the employer exercised reasonable
22 care to prevent and correct promptly any harassing
23 behavior;" and (2) "that the plaintiff unreasonably
24 failed to take advantage of any preventive or
25 corrective opportunities provided by the employer or to
26 avoid harm otherwise.".  <u>See</u> <u>Nichols</u>, 256 F.3d at 877.
27     27. Plaintiff has raised a genuine issue that
28 Defendant did not promptly correct Fernando's harassing

12

behavior.

28. As to liability for actions by coworkers, "employers are liable for failing to remedy or prevent a hostile or offensive work environment of which management-level employees knew, or in the exercise of reasonable care should have known." McGinest, 360 F.3d at 1119.  An employer may nonetheless avoid liability for such harassment by undertaking remedial measures "reasonably calculated to end the harassment." Id. "The reasonableness of the remedy depends on its ability to: (1) 'stop harassment by the person who engaged in the harassment;' and (2) 'persuade potential harassers to refrain from unlawful conduct.'" Id.  To be adequate, an employer must intervene promptly. Id. (citing Intlekofer v. Turnage, 973 F.2d 773, 778 (9th Cir. 1992)).

29. Plaintiff has raised a genuine issue that Defendant did not promptly stop harassment by Plaintiff's coworkers.

30. The anti-retaliation provisions of Title VII forbid retaliation against an employee or job applicant who has made a charge, testified, assisted, or participated in a Title VII proceeding or investigation.  42 U.S.C. § 2000e-3(a); Burlington Northern & Santa Fe Ry. v. White, 548 U.S. 53, 56 (2006).

31. The plaintiff must establish a prima facie case of retaliation by demonstrating: 1) he engaged or was

1  engaging in activity protected under Title VII, 2) the
2  employer subjected him to an adverse employment
3  decision, and 3) there was a causal link between the
4  protected activity and the employer's action. <u>Yartzoff</u>
5  <u>v. Thomas</u>, 809 F.2d 1371, 1375 (9th Cir. 1987).
6      32. To establish causation between a protected act
7  and an adverse employment action, Plaintiff must
8  demonstrate that engaging in the protected activity was
9  one of the reasons for the adverse employment action.
10 <u>Villiarimo v. Aloha Island Air</u>, 281 F.3d 1054, 1064-65
11 (9th Cir. 2002).
12     33. The Ninth Circuit has recognized that in some
13 causes, causation can be inferred from timing alone;
14 however, the adverse employment action must have
15 occurred fairly soon after the employee's protected
16 expression. <u>Id.</u>
17     34. If the plaintiff establishes a prima facie
18 case, the burden shifts to the employer to offer a
19 legitimate, non-retaliatory reason for the adverse
20 employment action. <u>Davis v. Team Elec. Co.</u>, 520 F.3d
21 1080, 1088-89, 1091 (9th Cir. 2008).  If the employer
22 offers such a reason, the burden then shifts back to
23 the plaintiff to show that there is a genuine dispute
24 of material fact that the employer's proffered reason
25 for the challenged action is pretextual. <u>Id.</u> at 1091.
26     35. Plaintiff fails to set forth a prima facie case
27 of retaliation for 1) filing a workers' compensation
28 claim and 2) complaining of race discrimination against

Defendant.

36. Although Plaintiff sets forth a prima facie case of retaliation for filing two charges with the EEOC against Defendant, Plaintiff fails to articulate a valid argument as to why Defendant's legitimate, non-discriminatory reasons are merely a pretext for retaliation.

**IT IS SO ORDERED.**

DATED: January 2, 2014

RONALD S.W. LEW
_____
**HONORABLE RONALD S.W. LEW**
Senior U.S. District Judge

15